IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Sandy Hanebrink, ) | Civil Action No.: 8:08-0074-HMH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Marcia Adams, in her official capacity, ) | |
| as Acting Director of the South ) | |
| Carolina Department of Motor ) | |
| Vehicles, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 43] pursuant to Federal Rule of Civil Procedure 56. The plaintiff seeks prospective injunctive relief based on a claim of disability discrimination pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff represents that she is a quadriplegic secondary to transverse myelitis requiring use of wheelchair for mobility, adrenal insufficiency, pan-hypo pituitary, hypo-thyroid, neurogenic bowel and bladder, autonomic dysreflexia, multiple allergies, autoimmune and autonomic nervous system dysfunction, and fatigue. (Pl. Mem. Opp. Summ. J., Ex. 1 at 2.) She lives in Anderson, SC, and has indicated no intention of leaving. (Def. Mem. Supp. Summ. J., Ex. A ¶ 6.) The plaintiff visited the defendant's Department of Motor Vehicles ("DMV") facility, in Greenville, SC, on April 12, 2007 to renew her driver's license. *Id.* at ¶ 1. She visited the defendant's Anderson facility to renew two placards for the disabled, on April 19, 2006. (Pl. Mem. Opp. Summ. J., Ex. 1 at 2.) The plaintiff later

visited the defendant's facilities in Seneca and Belton[1] on September 9, 2007. (Pl. Mem. Opp. Summ. J., Ex. 1 at 2-3.)

The plaintiff lives within 9.4 miles of the Anderson facility. (Def. Mem. Supp. Summ. J., Ex. B.) She lives 17.9 miles from the Belton facility, 28.2 miles from the Seneca facility, and 32 miles from the Greenville facility. *Id*. The estimated travel time between her home and the Anderson facility is 24 minutes. The estimated travel time to the Belton facility is 35 minutes, to the Greenville facility is 37 minutes, and to the Seneca facility is 39 minutes. *Id*.

The plaintiff complains that at the Anderson facility she was refused service because it did not have a lower vision check machine and that it was not lowered so that she could be tested. (Pl. Aff. ¶ 10.) She contends that she was told that she had to pay for an eye exam and that she should do her license renewal on-line instead of in person, which is only for a 5-year renewal instead of 10. *Id*. The plaintiff also complains that at the various facilities she experienced, among other things, difficulties with the following:

- restroom accessibility
- parking, walkway, and driveway slopes and cross slopes
- disability related signage
- parking
- counter heights

(See Pl. Mem. Opp. Summ. J., Ex. 1 at 2-3; Pl. Aff. ¶¶ 10-12.)

In response to these issues, and by the completion of the parties' briefing of this motion for summary judgment, the defendant had renovated its Seneca facility to address all ADA compliance issues. (3rd Rock Aff. ¶ 7.) Renovations to the Anderson facility, which were originally scheduled to begin by the end of September 2008, (2nd Rock Aff., Ex. D), were completed in December 2008 or January 2009, (3rd Rock Aff. ¶6).

---

[1] Although the plaintiff visited the Belton cite, it does not appear to be one of the facilities upon which the plaintiff has based her suit.

During the course of this lawsuit, the defendant also vacated its current Greenville facility, on Laurens Road, and transferred its services to a completely new location in Greenville, by October 10, 2009. *Id*. ¶ 4. The plans for the new Greenville facility purported to render it completely ADA compliant. (1st Rock Aff., Ex. D Ex. G.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this

3

standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

The plaintiff complains that the defendant has discriminated against her on account of her disability insofar as she has been denied access to its services and programs. She has requested that the Court order the defendant to make its facilities ADA compliant. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. For the plaintiff to prove that a public program or service has violated Title II, she must satisfy three statutory elements: (1) she is a "qualified individual with a disability"; (2) she was either excluded from participation in or denied the benefits of

a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Levy v. Mote*, 104 F. Supp. 2d 538, 543 (D. Md. 2000) (citing *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir.2005). Critically, the issue is one of "'program accessibility' rather than 'facilities accessibility.'" *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 860 (10th Cir. 2003). A public entity "is not required to make structural changes in existing facilities where other methods are effective in achieving compliance." *Id*.

**I.     Mootness**

The defendant first contends that this case should be dismissed as moot. Specifically, the defendant argues that because it has a comprehensive remediation plan in place for the contested facilities or has otherwise renovated such facilities, then there no longer exists any case or controversy.

It is well-settled that a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *See Leonard v. Hammond*, 804 F.2d 838, 842 (4th Cir.1986); *see also Murphy v. Hunt*, 455 U.S. 478, 481 (1982). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Buckhannon Bd. and Care Home, Inc. v. West Virginia*, 532 U.S. 598, 609 (U.S. 2001) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citations omitted) (emphasis added). The United States Supreme Court has emphasized that the standard for determining whether a case has been mooted by the defendant's voluntary conduct is a stringent one: "A case might become moot if subsequent events made it absolutely clear that the allegedly

5

wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id*.

The defendant would rely on *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365 (S.D. Fla. 2006) and *Morrell v. Barter Foundation, Inc.*, 2007 WL 1412960 (W.D. Va. May 11, 2007) to show that the presence of a comprehensive plan for ADA compliant renovations makes it "absolutely certain that any future ADA violations . . . could not be reasonably expected to occur." *Id*. As the defendant concedes, however, the opinion in *Access 4 All* was vacated, albeit with the consent of all the parties. *See Access 4 All, Inc. v. Casa Marina Owner, LLC*, 264 Fed. Appx. 795 (11th Cir. Feb 05, 2008). Its reasoning, therefore, is illustrative at best.

Beyond these two cases, the Court has found essentially no court of appeals or district court cases considering the affect of a comprehensive remediation plan on the mootness of an ADA claim.² While the two district court decisions cited by the defendant are certainly exemplary, the one vacated decision and the one unpublished decision can carry only so much persuasive force.

Outside of the ADA context, the law in the Fourth Circuit regarding the voluntary cessation of allegedly illegal conduct, generally, appears well-established, however, and tracks the teachings of the United States Supreme Court in *Buckhannon*. For voluntary cessation to render a case moot two conditions must exist: (1) it must be said with assurance that "there is no reasonable expectation . . . that the alleged violation will recur

---

² The Ninth Circuit, in *Disabled Rights Action Committee v. Fremont Street,* 44 Fed. Appx. 100, 103 (9th Cir. 2002), an ADA case, based its reasoning in part on the mootness of the compliance issues (to wit, non-compliant kiosk torn down and therefore no compliance issue remained). But that case provides little instruction, because the analysis did not turn principally on the effect of a compliance *renovation plan* on the viability of a Title II claim, as is at issue here.

. . . and (2) interim relief or events have completely eradicated the effects of the alleged violation." *Jones v. Poindexter*, 903 F.2d 1006,1009 (4th Cir.1990) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  The Court, therefore, will consider the ongoing viability of the plaintiff's claims in light of the two cited ADA cases and the Fourth Circuit's instruction regarding voluntary cessation.

In *Access 4 All*, the court held that if a plaintiff in an ADA case already has received everything to which he would be entitled, then those claims are moot absent any basis for concluding that the plaintiff will be subjected again to the same wrongful conduct by the defendant. *See Access 4 All*, 458 F. Supp. 2d at 1365 (citing *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Haw. 2000)).  There, an advocacy group and a disabled individual claimed that the defendant, a resort facility, violated the ADA in various ways. The court, however, found that the plaintiffs' claims were moot because "[d]efendant's plans for ADA compliant renovations were already in effect prior to [p]laintiffs' filing their lawsuit, thus making it absolutely certain that any future ADA violations at the Casa Marina Resort could not be reasonably expected to occur." *Access 4 All*, 458 F. Supp. 2d at 1365.

Critically, in *Access 4 All*, there was a comprehensive plan in place to remodel the entire facility and bring it into compliance with the ADA. The court noted that the new owner of the resort had invested approximately $38 million to renovate the facility and bring it into compliance with the ADA. *See Access 4 All*, 458 F. Supp. 2d at 1365. Specifically, on or about January 1, 2006, prior to the filing of the lawsuit, the defendant entered into a contract with an architectural firm for services regarding the renovations of the resort. *Id.* at 1363.  The architectural firm developed a quote for architectural plans, prepared the plans for renovations and modifications, submitted the plans to the city planning board and attended numerous meetings with the city planning board and its various building boards/departments, including a meeting on July 27, 2006, for final approval of the plans.

*Id*. at 1363-64. The architectural firm certified that the plans were in compliance with applicable laws as required by the city planning board guidelines in preparation of the plans for renovations and modifications to the resort. *Id*. at 1364.

In submitting plans for approval by the city planning board, the architectural firm was required to comply with all ADA requirements for public lodging facilities. *Id*. The firm was required by the city to supply the appropriate construction drawing reflecting ADA compliance at the time of building permit submittal. *Id*. Finally, in submitting plans for the city planning board's approval, the architectural firm was required to assist in obtaining all necessary permits and licenses, including building permits, which were required by federal, state, county and city agencies. *Id*. In an effort to confirm that the proposed renovations and architectural plans developed since the purchase of the resort complied with the ADA, the firm examined the specific barriers alleged in the complaint. *Id*. Furthermore, and again in an effort to confirm the accuracy of the proposed renovations and architectural plans, the firm also consulted with an expert in Title III ADA matters. *Id*. Likewise, this expert confirmed that the architectural planning documents that the firm prepared and submitted to the city planning board addressed the remedy needed for those additional barriers that the expert encountered during a property inspection of the resort on July 6, 2006. *Id*.

By contrast, the court, in *Morrell v. Barter Foundation, Inc.*, 2007 WL 1412960 (W.D. Va. May 11, 2007), declined to find that a proposed renovation mooted the plaintiff's ADA claim because the renovation was not certain to occur or to remedy the alleged wrongs. In *Morrell*, while the funding for the renovation had been approved, it was possible that the funding could be lost if the defendant had failed to proceed with construction before the appropriate authorization was not obtained at *each phase* of the renovation. *Id*. at \*5. The initial funding approval was only the "first step in a very rigorous process." *Id*. In other

words, the court in *Morrell* was compelled by the presence of a number of financial contingencies which made the remedy less than "absolutely certain." *Id*.

The renovation circumstances of the present case, unlike in *Morrell*, are no longer contingent at all. The new Greenville location opened to the public on October 10, 2008. (3rd Rock Aff. ¶ 4.) The renovation of the Seneca facility is also complete. *Id*. ¶ 7. As of the briefing of this motion, the renovation of the Anderson facility was scheduled to begin December 3, 2008, and to be completed within 30 days. *Id*. ¶ 6. The plaintiff has not produced any evidence that the Anderson renovation has not been completed as scheduled. Accordingly, unlike *Morrell*, there is essentially no contingency involved with the present renovations.

The evidence indicates that the renovations have cured the compliance and accessibility issues. The renovations at the Anderson facility include creating accessible parking spaces as close as possible to accessible entrances and along accessible routes and access aisles; creating a van accessible parking space; installing additional identification signs related to accessible parking spaces, entrances, counters and bathrooms; installing railings on ramps; expanding the facility's entrance; replacing door handles; adjusting door closers; installing accessible counters; renovating the customer bathroom; installing a new water cooler; and creating a new wall and hinged door to make an accessible route to employee spaces. (See 1st Rock Aff., Ex. B; Def. Mem. Supp. Summ. J., Ex. E.)

The renovations already completed at the Seneca facility include re-striping the asphalt to indicate accessible parking spaces; adding signs identifying those spaces; adding a concrete strip to the sidewalk; adding an angle to the ramp; replacing interior hardware with accessible levers; adding signs identifying the accessible bathroom, counters, entrance and testing station; and installing a grab bar in the bathroom. (See 1st Rock Aff., Ex. C; Def. Mem. Supp. Summ. J., Ex. F1, F2, & F3.)

Likewise, the evidence indicates that the new Greenville facility is completely ADA compliant. (See 1st Rock Aff., Ex. D; Def. Mem. Supp. Summ. J., Ex. G.)

The plaintiff, however, complains that the renovations are somehow inadequate. To that end, the plaintiff has produced the affidavit of her expert witnesses William B. Cody, as well as her own affidavit, to demonstrate the alleged deficiencies.

First, it appears that Cody only evaluated plans for the Greenville and Seneca facilities and not for Anderson.[3] (Cody Cert. ¶ 5.) Accordingly, he has rendered no opinion regarding any alleged deficiencies in that facility, which would create issues of fact as to whether the renovations are ADA compliant. (See generally Cody Cert.) Second, as to the Greenville plan, it appears that Cody was mistaken as to its purpose. Cody contends that the plan fails to remediate *existing* issues with parking, curb cuts, entrance slopes, and restroom renovations. *Id.* ¶ 6. For example, he claims that the "curb cut that is present at the front entrance is not scheduled to be *removed*." *Id*. (emphasis added). Of course, these types of comments betray Cody's misconception. (See 3rd Rock Aff. ¶ 8.) The Greenville plan is for an entirely new facility and not for any renovation of the previous Laurens Road facility in Greenville. (1st Rock Aff. ¶ 5, Ex. D.) So inclusion of plans for scheduled "removal" of the curb or slopes would be utterly meaningless; his stated failure to find such plans, therefore, is equally so. His other objections are likewise not consistent with a proper understanding that the Greenville plan relates to a completely new facility.

---

[3] There is no dispute that the plaintiff was provided, on various occasions, copies of the plans for the Anderson facility. (Thomas Aff. ¶ ¶ 2, 7.) The defendant attempted on both occasions, prior to summary judgment, to see if the plaintiff was amicable to a stipulation of dismissal based on the proposed renovations. *Id*. ¶ ¶ 2-8. The Court agrees with the defendant that Cody's certification in a number of respects evidences a cursory and potentially eleventh-hour consideration of the proposed renovations. *Id*. ¶ ¶ 11-14; *compare* Cody Cert. *with* 3rd Rock Aff. The plaintiff's attempts to contest the adequacy of the rather thorough efforts and plans of the defendant feel less than in good faith and are not commensurate in scope with the energy apparently applied by the defendant to be responsive to a legitimate deficiency with its facilities. If the plaintiff means what she says, that ADA compliance is her only goal, there is no additional glory or victory in a court judgment. Her efforts have motivated, by all accounts, a thorough and substantial accessibility renovation.

(See Cody Cert. ¶ 6.)  The plaintiff has not made any sur-reply to clarify Cody's intention or to otherwise rehabilitate the evidence.  Accordingly, to the Court, Cody's affidavit fails to create any issues of fact whatsoever as to the failure of the Greenville or Anderson plans to remedy ADA concerns at the respective sites.

Likewise, the plaintiff's own affidavit which purports to criticize the renovations as incomplete, fails to create any genuine issues of fact in that regard.  Critically, the plaintiff's affidavit was prepared, as signed, October 9, 2008, prior to the opening of the new Greenville location, on October 10, 2008  (3rd Rock Aff.  ¶ 4) and prior to the renovation of the Anderson facility in December 2008, *id*. ¶ 6.  Her own words betray her lack of personal knowledge regarding the status of the renovations: "[T]he Greenville location has not relocated . . . ."  (Pl. Aff. ¶ 13.)  While technically true, the facility was necessarily substantially complete because it, in fact, opened the very next day, on October 10.  (3rd Rock Aff.  ¶ 4.)  So the affidavit is irrelevant to whether those renovations are sufficient or effective.  She could not, at the time of the affidavit, have spoken to any particulars regarding either the Greenville or the Anderson facilities and did not.[4]

---

[4]  The plaintiff submitted a supplemental statement, which included some observations concerning the new Greenville, facility on November 7, 2008. That statement, however, was attached as an exhibit to the plaintiff's response [Doc. 71] to the defendant's *motion to strike* [Doc. 51].   It was not obviously associated with the plaintiff's response to summary judgment and, frankly, the Court only inadvertently rediscovered it.   Overall, the plaintiff has simply not made her argument or evidence easy to entertain.  This is particularly problematic considering the enormous factual density of this case.
In this supplemental affidavit, the plaintiff complains that:

- you scrape your vehicle on the driveway entrance
- that the driveway is too steep to push up a wheelchair
- there are "cross slopes" in the disabled parking spaces
- the wheelchair route was "uneven" and had "cross slopes"
- she was not served at the "lowered" service area
- the route to the bathroom facilities is uneven and contains some cross slopes

[Doc. 71-1.]  The Court cannot imagine how a reasonable jury could conclude that there were ADA issues with the Greenville facility based on this affidavit. First, the plaintiff, while clearly an individual with substantial personal and professional experience related to

To the Court, the inability of the plaintiff, either through her own statements or those of her expert, to call into to question the efficacy of the renovations ends the analysis. The plaintiff has failed to produce any evidence that the Greenville and Anderson facilities, post-renovation, continue to make inaccessible to her the defendant's programs and services. The defendant is not required "to make *each of its existing facilities* accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1) (emphasis added). Rather it is simply required to make its "service, program, or activity readily accessible." *Id*.; *Childers v. County of York*, 2008 WL 2563152, at *4 (D.S.C. June 23, 2008); *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999). So whether or not the

---

accessibility matters, *see id.,* has not been designated an expert in this case and should not be allowed to offer such testimony. The deadline for expert designation was April 25, 2008. [Doc. 10.] As stated, this affidavit was not submitted until November 7, 2008. So her lay observations, which are certainly within her personal knowledge, should not be additionally credited as expert.

Second, the evidence says nothing about whether the facility is actually ADA compliant. A number of her complaints have nothing to do with accessibility for disabled persons. Disabled and non-disabled persons alike are equally positioned to have their cars scrape a too steep driveway and to be frustrated by inattentive service at the DMV; in fact, the Court would take notice that such service is of the kind you traditionally expect at a DMV. Moreover, the other accusations concerning uneven surfaces and cross slopes are vague and generalized and say nothing about whether those portions of the facility actually conform to ADA regulations or otherwise prohibit access to any services or programs of the defendant. It is clear from the affidavit that she in fact was able to access all portions of the facility.

Lastly, the affidavit, filed on November 7, 2009, like her October 2008 affidavit, can say nothing about the renovation of the Anderson facility in December 2008. Accordingly, even were the Court to credit the affidavit as probative evidence for the jury's consideration, the case is still moot because there is still no genuine issue of fact remaining as to the propriety of the Anderson renovation, which is the facility closest to the plaintiff.

Seneca facility is ADA compliant[5] is irrelevant since two other and proximate facilities, including the one closest to the plaintiff (Anderson), have been properly renovated.

The plaintiff herself has readily expressed her hope that the whole matter might be rendered moot and has even implied that she would dismiss the case on condition that the defendant file an affidavit of intended compliance and a subsequent certification of completion. (Pl. Aff. ¶ ¶ 1, 3.) The plaintiff has expressed a generalized concern, however, that the defendant will not follow through with its proposed renovations. *Id*. ¶ ¶ 3, 4. Of course, that is the problem with the plaintiff's position. The defendant has produced evidence of ADA compliant renovations and further that the renovations are complete. But the plaintiff has summarily rejected it. And, in light of the defendant's proffer, the plaintiff may not prevail simply because she has an ongoing, subjective mistrust that the proposed renovations are not as the defendant says they are or that they will be completed properly. She must produce actual evidence that the renovations are, in fact, ineffective. In spite of

---

[5] In regards to the Seneca facility, the plaintiff's expert has made various allegations that the renovations are less than what the ADA demands. As the defendant rejoins, however, most of Cody's observations are based on the ADAAG, which are not controlling for an existing facility, like the one in Seneca. *See Torcasio v. Murray*, 57 F.3d 1340, 1352 (4th Cir. 1995) ("[T]hese guidelines apply only to 'newly designed or newly constructed buildings and facilities and altered portions of existing buildings and facilities.'" 28 C.F.R § 35.150). For example, Cody contends that the slope at the "front entrance is not scheduled to be corrected." (Cody Aff. ¶ 7.) Cody originally measured that slope at 3%. (Cody Report at 13.) Cody implies, without specification or explanation, that the ADA Accessibility Guidelines (ADAAG 4.13.6) require some lesser grade. *Id*. Cody nor the plaintiff has explained or brought forward evidence demonstrating how the 3% grade has actually created an accessibility issue to the defendants programs or services. *See Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999) (finding that the ADAAG provide valuable guidance but ultimately the plaintiff's obligation to prove that the stadium, viewed in its entirety, [was] not readily accessible to and usable by individuals with disabilities" was "the lesser standard for existing facilities under Title II . . . ."). Because the ADAAG are not dispositive, it is essential that she make such a proof. Accordingly, the Court is doubtful that Cody's affidavit in this regard is sufficient to create issues of fact as to the effectiveness of the Seneca retrofit.

Notwithstanding, the Court declines to make any specific finding as to the Seneca facility because of the undisputed accessibility of the Greenville and Anderson facilities. As stated, the presence of those facilities is sufficient to render the Title II claim moot.

ample opportunity to do so, she has produced none nor petitioned the Court for leave to buttress her view.

In light of *Access 4 All* and *Morrell*, the renovations in this case would seem substantially more certain to have remedied the alleged concerns. Unlike either of those cases, the defendant here has actually brought forward evidence of ADA-compliant renovations. (See generally 3rd Rock Aff. & Exs.) So the contingencies present in *Morrell* are absent here. The Court would note that in *Access 4 All*, there seemed to be greater evidence of record, than here, as to the attempts to ensure, on the front end, that the proposed renovations were ADA compliant. *See Access 4 All*, 458 F. Supp. 2d at 1363-64. But, the difference is only one of degree. In this case, the renovation and relocation plans were specifically drafted to address all ADA access issues. (1st Rock Aff. ¶ 4, 5, Ex. B ("General Up-fit and ADA Modifications".) The architectural firm provided accessibility analysis and cited to relevant guidelines. (*See, e.g., id.* Ex. B.)

Accordingly, the renovations make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Buckhannon*, 532 U.S. at 609. Said differently, the evidence of renovation is so thorough and the plaintiff's objections so scant, that the Court would be at a loss as to how to articulate a remedy even if it wanted to. The plaintiff has not expressed to the Court any remediation, post-renovation, which it can legally demand of the defendant. While the plaintiff had a substantial list of ADA compliance issues at the start of the lawsuit, she has failed to produce any evidence of lingering ones subsequent to renovation.

As a result there is (1) "no reasonable expectation . . . that the alleged violation will recur and (2) interim relief or events have completely eradicated the effects of the alleged violation." *Jones*, 903 F.2d at 1009. There is nothing left to require of the defendant, which is the very essence of mootness.

## II.     Standing

The defendant has alternatively argued that the case should be dismissed because the plaintiff lacks standing, insofar as she has not suffered any actual injury. As the defendant contends, the "irreducible constitutional minimum of standing requires: (1) that the plaintiff personally has suffered actual or threatened injury that is concrete and particularized, not conjectural or hypothetical. . . ." *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public." *Lujan* 504 U.S. at 575. A plaintiff must instead suffer an invasion of a legally protected interest that is "concrete and particularized" before she can bring an action. *Id*. at 560.

The defendant contends that the plaintiff has not alleged any actual injury insofar as she has been able to renew her driver's license, apply for and renew vehicle tags and placards, and take advantage of all other service offered by the DMV. [Def. Mem. Supp. Summ. J., Exhibit A at ].

The Court would not recommend dismissal for want of standing. First, the plaintiff has pled various forms of injury. For example, she contends that she had to pay for an eye exam that was unnecessary (Def. Mem. Supp. Summ. J., Ex. A) and that her various trips to multiple facilities cost her time, money, and caused her mental anguish. [Doc. 71-1 at 14.] The plaintiff also contends that because she is seeking prospective injunctive relief,[6]

---

[6] This point implicates another matter entirely. The parties have litigated the summary judgment motion as if only a request for injunctive relief were at issue. (Def. Mot. Summ. J. at 1 ("Hanebrink seeks injunctive relief, attorney's fees and costs.") In response to the defendant's standing argument, for example, the plaintiff exclusively talks about the case as one for prospective injunctive relief. (Pl. Mem. Opp. Summ. J. at 11.) And as discussed, the plaintiff has indicated in her sworn statements that this case is simply about forcing compliance with the ADA. (See, e.g., Pl. Aff., November 2008.) The plaintiff has nowhere argued any claim for damages in her response to summary judgment or attempted to correct the defendants' characterization that only injunctive relief has been sought. Damages are, in fact, available under Title II, however. *See United States v. Georgia*, 546

15

her intentions on revisiting the defendant's facilities qualifies as a "real and immediate threat" of injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The Court would agree that a "disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'acutal injury.'" *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *see also Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (disabled plaintiff established likelihood of future injury by submitting evidence that he would like to visit defendant's restaurant in the future, had patronized other restaurants in the chain, and the restaurant was close to his residence and was on a familiar bus line). The plaintiff will most certainly have occasion to revisit the DMV, for license renewal or otherwise (Def. Mem. Supp. Summ. J., Ex. A ¶ 1, 2), and to the Court the threat of noncompliance, when that occasion occurs, is sufficient actual injury in addition to the above described difficulties she incurred.

### III.     Miscellaneous

In response to the defendant's motion for judgment, the plaintiff has included several stray and thinly supported "arguments" which she contends entitle her to judgment as a matter of law. The Court would briefly address each in turn.

The plaintiff makes a cursory argument regarding the defendant's alleged failure to have a governmental head give a written statement as to why it could not create accessibility for the plaintiff. The plaintiff cites 28 C.F.R. § 35.107 (c)(b) [sic] and 28 C.F.R. § 107(c)(b) [sic]. As the defendant notes, there is no regulation designated as 28 C.F.R. § 107. There is a 28 C.F.R. § 35.107, but it does not contain a subsection (c). Subsection

---

U.S. 151, 154 (2006) ("Title II [of the ADA] authorizes suits by private citizens for money damages against public entities that violate § 12132."). And, in her request for relief in her Complaint, the plaintiff summarily pleads, in one word, a demand for "damages." (State Ct. Compl. ¶ 15.) To the extent she ever actually intended such a claim, however, the parties have litigated the case as though it were abandoned.

(b) states: "Complaint procedure. A public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part."  28 C.F.R. § 35.107(b). The plaintiff has made no effort to otherwise support or explain her argument.  The regulation does not appear to require what the plaintiff claims and, further, even to the extent that it does, the Court is unaware of any case concluding that a private cause of action is available.  The Court has discovered no reason why this summary argument would entitle her to judgment as a matter of law.

In one sentence, the plaintiff also argues that she is entitled to judgment as a matter of law for want of a transition plan, in accordance with 28 C.F.R. § 35.150.  As the plaintiff contends, the lack of such a plan, however, has generally been found to be unenforceable through a private cause of action.  *See  Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006)*; Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913-15 (6th Cir. 2004).  *But cf. Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 858-60 (10th Cir. 2003). The majority rule is rooted in the United States Supreme Court's instruction, in *Alexander v. Sandoval*, 532 U.S. 275, 284-85 (2001), that implementing regulations do not create a private right of action where they impose "an obligation beyond the statutory mandate . . . ." *Iverson*, 452 F.3d at 101.  The First Circuit in *Iverson* found that because a public entity might be fully complaint with Title II without observing the commands of the self-evaluation and transition plan regulations, the regulations necessarily imposed an obligation beyond the statute.  *Id*.  The Tenth Circuit's opposite conclusion, in *Chaffin*,[7] that Section 35.150

---

[7] It should be noted that the Tenth Circuit did perform a mootness analysis.  But, to be clear, that analysis related to whether the transition and self-evaluation plans prepared by the defendant satisfied the elements of Section 35.150 and other relevant regulations. *Chaffin*, 348 F.3d at 861-64.  *Chaffin* should not be interpreted as somehow requiring a fully compliant transition plan before a Title II claim is mooted, however.  As discussed, *Chaffin* involved a claim based on the implementing regulations and not Title II itself.

17

does create a private cause of action, has been criticized for "inexplicably disregard[ing]" this corollary rule.  *Id*. at 102.

The Court would agree with, and adopt, the majority view here.  The Section 35.150 clearly imposes procedural obligations beyond what is required by the ADA and, therefore, should not be viewed as creating a private right of action.  Thus, the plaintiff is not entitled to any judgment based on the absence of a transition plan.[8]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 43] be GRANTED.

IT IS SO RECOMMENDED.

> s/Bruce H. Hendricks
> United States Magistrate Judge

June 5, 2009
Greenville, South Carolina

---

[8]  Even if she were, the Court could not grant judgment in her favor because she has presented no evidence or argument on the matter.