IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Sandy Hanebrink, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 8:08-74-HMH |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Marcia Adams, in her official capacity, ) | |
| as Acting Director of the South Carolina ) | |
| Department of Motor Vehicles, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the Defendant's second motion for summary judgment. Sandy Hanebrink ("Hanebrink") seeks prospective injunctive relief based on disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. For the reasons set forth below, the court grants the Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2008, Hanebrink brought suit under the ADA. Hanebrink alleges disability discrimination by the Defendant because the Defendant's facilities are not compliant with the ADA. (Compl., generally.) Hanebrink resides in Anderson, South Carolina. She is a partial quadriplegic. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Ans. Interrogatory 2).) Hanebrink submits that the Defendant's facilities located in Greenville, Anderson, Belton, and Seneca do not comply with the ADA and her "ability to utilize the Defendant's facility has been greatly impaired as a result of the server slopes in the parking, access aisles, curb ramps, bathrooms, lack of signage, and maintenance." (Pl. Mem. Opp. Sec. Summ. J. 4.)

1

Hanebrink seeks an injunction requiring that the Defendant bring its facilities into compliance with the ADA.  The Defendant has undertaken extensive renovations at the Anderson and Seneca locations and relocated the Greenville and Belton facility to renovated facilities.  The Defendant submits that the facilities are now fully compliant with the ADA. (Def. Sec. Mem. Supp. Summ. J. Exs. (Marshall Rock Affs. and Wendy Gaskins Aff., generally).)

On September 9, 2008, the Defendant moved for summary judgment alleging in part that Hanebrink's ADA claim was moot because the Defendant has a comprehensive remediation plan in place to bring the facilities into compliance with the ADA.  (Def. Mem. Supp. Summ. J. 7.)  In a June 5, 2009 Report and Recommendation, United States Magistrate Judge Bruce Howe Hendricks recommended granting the Defendant's motion for summary judgment concluding that Hanebrink's claim was moot.  On August 6, 2009, the court declined to adopt the Report and denied the Defendant's motion with leave to refile because additional remediation to the Defendant's facilities had been undertaken.  Further, there were no additional filings updating the parties' positions regarding the renovations.  As a result, the court concluded that taking the facts in the light most favorable to Hanebrink, there remained genuine issues of material fact.  The Defendant filed a second motion for summary judgment on September 8, 2009.   Hanebrink filed a memorandum in opposition on October 5, 2009.  The Defendant filed a reply on October 16, 2009, and Hanebrink filed a sur reply on October 19, 2009.  The court held a hearing on October 20, 2009.  This matter is ripe for consideration.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Defendant's Second Motion for Summary Judgment

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132.  For Hanebrink to establish that a public program or service has violated Title II, she must satisfy three statutory elements:  (1) "[s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of h[er] disability."  Childers v. County of York South Carolina, C.A. No. 0:06-897-CMC-BM, 2008 WL 2563152, at *3 (D.S.C. June 23, 2008) (unpublished) (citing Levy v. Mote, 104 F. Supp. 2d 538, 543 (D. Md. 2000), and Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995)).

The Defendant's facilities at issue in this lawsuit are located in existing facilities that have been partially renovated.  The Anderson and Seneca facilities were built in 1971 and 1972, respectively. (Def. Mem. Supp. Sec. Summ. J. Exs. (Rock Aff. ¶¶ 3-4).)  Further, the Belton and Greenville facilities were relocated to other existing buildings and certain renovations were made to the space utilized by the Defendant.  The Defendant is not required "to make each of its existing facilities accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.150(a)(1).  Instead, the Defendant is required to make its "service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.150(a); Childers, 2008 WL 2563152, at *4.

The Defendant is required to provide disabled individuals with "meaningful access" to its programs and services.  Patton v. TIC United Corp., 77 F.3d 1235, 1246 (10th Cir. 1996). "[T]o assure meaningful access, reasonable accommodations in the [public entity's] program or

benefit may have to be made." Alexander v. Choate, 469 U.S. 287, 301 (1985) (discussing Rehabilitation Act, which also applies to the ADA). In addition, a public entity "is not required to make structural changes in existing facilities where other methods are effective in achieving compliance." § 35.150(b)(1).

> Section 35.150(b) . . . provides that, as to "existing facilities," a "public entity may comply with the requirements" of the code by various means including redesign, delivery of services at alternate sites, assignment of aides, "or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities."

Vandeusen v. Riverbanks Society, C/A No. 3:06-3281-CMC-BM, 2008 WL 3010149, at *8 (D.S.C. Jul. 31, 2008). "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how to make access available." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 6 (1st Cir. 2000).

However, a Title II violation "does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. . . . If a [facility's] wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the [facility] is 'readily accessible.'" Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001).

Hanebrink seeks an injunction requiring the Defendant to bring the Greenville, Anderson, Seneca, and Belton facilities into compliance with the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). The ADAAG applies to "newly designed or newly constructed buildings and facilities and altered portions of existing buildings and facilities." 35 C.F.R. Pt. 1191 App. A at 4.1.1. For the reasons set forth below, Hanebrink has failed to raise

5

any genuine issues of material fact concerning whether the Defendant's programs and services are "readily accessible" to her.

First, Hanebrink has failed to submit any expert evidence that the facilities fail to comply with the ADAAG. Hanebrink conceded at the hearing that she has no expert that has evaluated whether the Defendant's facilities, as renovated, comply with the ADAAG. To the contrary, Marshall Rock ("Rock"), program coordinator and the designated facilities manager for the SCDMV, states that the partial renovations to the Anderson, Seneca, Greenville, and Belton facilities were designed to comply with the ADA and that these facilities are fully compliant with the ADA. (Def. Sec. Mem. Supp. Summ. J. Exs. (Rock Affs., generally).) Rock attached the comprehensive plans for renovation of the facilities which provide that the renovations comply with the ADA. (Id. Exs. (First Rock Aff. Ex. B (Anderson Plans), Ex. C (Seneca Plans), Ex. D (Greenville Plans) & Gaskins Aff. Ex. E (Belton Plans).) In addition, the Defendant submitted the affidavit of Wendy Gaskins ("Gaskins"), facilities administrator for SCDMV, who states that the Anderson and Belton facilities are fully compliant with the ADA. (Id. Exs. (Gaskins Aff. ¶¶ 2, 6).) There is no expert evidence to the contrary. Based on the foregoing, Hanebrink has failed to raise any genuine issue of material fact that the facilities at issue violate the ADAAG.

Second, although the ADAAG provides valuable guidance regarding compliance with the ADA, it does not control in this case. Instead, the Defendant must meet "the lesser standard for existing facilities under Title II" that the facilities are "readily accessible." Pascuiti v. New York Yankees, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999).

The location of one "readily accessible" facility within close proximity of Hanebrink's home is sufficient to satisfy the mandates of the ADA as to Hanebrink because the Defendant is not required "to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Hanebrink does not need to be able to access each of the facilities. In fact, Hanebrink admitted that the only reason she visited the Belton facility was to "see if it was accessible." (Def. Mem. Supp. First Summ. J. Ex. 1 (Hanebrink Requests Admit No. 5).) Further, Hanebrink refers to herself as a "tester for others with disabilities." (Pl. Mem. Opp'n Sec. Summ. J. Ex. 1 (Hanebrink Certification ¶ 3).) However, there is more than one readily accessible facility within close proximity of Hanebrink's home. As set forth below, the Greenville, Anderson, and Seneca facilities are readily accessible to Hanebrink.

The Greenville facility is leased space within a privately owned building. (Hearing Tr. 39-40.) At the hearing, Hanebrink's counsel conceded that the interior of the Greenville facility was ADA compliant. (Id. 41.) However, Hanebrink stated at the hearing that gaining access to the Greenville facility cannot be done without assistance because the access route from the parking area does not comply with the slope requirements set forth in the ADAAG. (Id. 25.) The Defendant did not resurface the parking lot of the Greenville facility. (Id. 39-40.) Therefore, the ADAAG does not control the court's decision in this matter. Further, Hanebrink's certification states that she has visited the Greenville facility on several occasions and was able to access the building. (Pl. Mem. Opp'n Sec. Summ. J. Ex. 1 (Hanebrink Certification, generally).) Hanebrink stated that "[t]here is an accessible route from only 2 spaces to the route to the building and DMV office entrance. This route contains cross slopes and uneven surfaces. Once in the DMV office there is a lowered check in area, eye exam

7

machine and testing area." (Id. Ex. 1 (Hanebrink Certification ¶ 10).) Moreover, Hanebrink renewed her license at the Greenville facility and received a replacement placard from the Greenville facility. (Id. Ex. 1 (Hanebrink Certification ¶ 10).) Nowhere in her certification does Hanebrink state that she required the assistance of another person in order to gain access to the Greenville facility. Based on the foregoing, the court finds that the Greenville facility is readily accessible.

Likewise, the Anderson facility is readily accessible to Hanebrink. The Anderson facility is closest to Hanebrink's home and she does not intend to move from Anderson, South Carolina. (Id. Ex. 1 (Hanebrink Certification ¶ 10).) Prior to the renovations, Hanebrink complained that the Anderson facility did not have an accessible vision testing machine and accessible restroom. Further, Hanebrink stated that the parking area did not comply with ADAAG due to slopes and cross slopes and the parking spaces were improperly marked. (Def. Reply Ex. 1 (Ans. Interrogatory 2).) Since the completion of the renovations, the Anderson facility now has an accessible vison testing machine and restroom. (Def. Mem. Supp. Sec. Summ. J. Exs. (Gaskins Aff. ¶ 5-6).); (Pl. Mem. Opp'n Sec. Summ. J. Ex. 1 (Hanebrink Certification ¶ 7).) Hanebrink alleges that there are slope and cross slope ADAAG violations in the parking area. (Pl. Mem. Opp'n Sec. Summ. J. Ex. 1 (Hanebrink Certification ¶ 7).) However, Hanebrink's certification states that she has visited and obtained services from the renovated Anderson facility. (Id. Ex. 1 (Hanebrink Certification ¶ 7).) Hanebrink accessed the Anderson facility and utilized its services. (Id. Ex. 1 (Hanebrink Certification ¶ 7).) Moreover, Hanebrink does not outline any difficulties she encountered in gaining access to the Anderson facility. Hanebrink "got new tags at the Anderson DMV as well as a new 'month' sticker for my

van as the one I had could no longer be read." (Id. Ex. 1 (Hanebrink Certification ¶ 10).) She also "transferred her tags to/from my old van to my new van, got a bill of sale and turned in my old tag after successfully selling and transferring the title from my old van." (Id. Ex. 1 (Hanebrink Certification ¶ 10).) Hanebrink states that she "can renew placards and vehicle tags online or by mail now." (Pl. Mem. Opp'n Sec. Summ. J. Ex. 1 (Hanebrink Certification ¶ 10).)

In addition, after review of Hanebrink's certification, the Seneca facility is readily accessible to her. (Id. Ex. 1 (Hanebrink Certification ¶ 9).) With respect to the Belton facility, Hanebrink submits that she requested assistance from another patron to help her gain access to the Belton facility. (Id. Ex. 1 (Hanebrink Certification ¶ 8).) However, even assuming that the Belton facility is not accessible by her, the Defendant is not required to make all of its existing facilities readily accessible. Moreover, as noted above, Hanebrink has only visited the Belton facility as a "tester." (Def. Mem. Supp. First Summ. J. Ex. 1 (Hanebrink Request Admit No. 5).) "The ADA does not transform every disabled person into a roving paladin. It does not permit [Hanebrink] to bring claims on behalf of all disabled persons . . . ." Wasco v. T Corp., Civil Action No. 04-0099, 2008 WL 53707 at *2 (D.D.C. Jan. 3, 2008) (unpublished). As noted above, the Defendant is required to make its programs and services readily accessible to the disabled, not make every facility readily accessible.

At best, Hanebrink has shown that there are minor and isolated deviations from the ADAAG at the Defendant's facilities. However, this is insufficient to create a genuine issue of material fact because the alleged deviations from the ADAAG have not hindered her access to the Greenville, Anderson, and Seneca facilities. Hanebrink has not been denied access to any of the Defendant's services or programs. See Childers, 2008 WL 2563152, at *2 (finding no Title

II violation because "[w]hile Childers may not be afforded full and equal access *to the physical facility*, the County's multiple alternative means of delivering the desired service renders that service at least equally accessible to Childers as it is to other users without disabilities and, likewise, amounts to a reasonable modification of the procedures necessary to make the services as readily accessible to and useable by Childers as they are to a non-disabled individual" and denying injunctive relief because the County had plans for renovations and the "multiple means of delivery of its services" satisfied Title II); Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995) ("In order to establish [disability discrimination under Title II of the ADA,] a plaintiff must prove: . . . that he was excluded from the benefit due to discrimination solely on the basis of the disability."); Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (holding that although deaf inmate could physically attend prison activities, he did not have "meaningful access" without a sign language interpreter); Chaffin v. Kansas State Fair Bd., 348 F.3d 850, 857 (10th Cir. 2003) (finding that fairgrounds were not readily accessible because disabled individuals were unable to access "buildings, restrooms, dining areas, and seating areas across the entire fairgrounds"). Hanebrink complains about ADAAG violations at the facilities, but those alleged violations have not hindered her access to the Defendant's programs and services. Based on the competent evidence before the court, Hanebrink has failed to establish the existence of any genuine issue of material fact to dispute

the Defendant's position that the DMV's programs and services are readily accessible and provide her with meaningful access.[1]

Therefore, it is

**ORDERED** that the Defendant's second motion for summary judgment, docket number 101, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
October 26, 2009

---

[1] Having found that the Defendant is entitled to summary judgment because its programs and services are readily accessible to Hanebrink, the court declines to address the Defendant's other arguments in support of summary judgment.